122 N.J. Super. 156 (1972)
299 A.2d 737
JOHN W. HILL AND ERONA J. HILL, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF EATONTOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND JERRY CERAN AND EDITH V. CERAN, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 1972.
Decided December 7, 1972.
*158 Before Judges FRITZ, LYNCH and TRAUTWEIN.
Mr. Albert T. Berich, attorney for appellants (Mr. Daniel M. Waldman, on the brief).
Messrs. Campbell, Mangini, Foley, Lee & Murphy, attorneys for respondents Board of Adjustment of the Borough of Eatontown (Mr. Michael J. Cernigliaro, on the brief).
Messrs. Cerrato & O'Connor, attorneys for respondents Jerry and Edith Ceran (Mr. William J. Mehr, on the brief).
The opinion of the court was delivered by LYNCH, J.A.D.
Plaintiffs John W. Hill and Erona J. Hill (Hills), next door neighbors of defendants Jerry Ceran and Edith V. Ceran (Cerans), in the Borough of Eatontown, appeal from a judgment of the Law Division which affirmed the granting of a variance to the Cerans to permit certain additions to their residence. The additions would result in violation of the side yard requirement of seven feet as set forth in the applicable zoning ordinance. The proposed improvements would create a side yard of four feet.
On October 21, 1970, the Cerans applied for and received from the building inspector a permit to add a single car garage, laundry room, bath and foyer to their premises. The plans and specifications indicated that the side yard would be only four feet but the Cerans did not know of the seven foot requirement. There is no showing of fraud or lack of good faith on the part of the building inspector in issuing the permit. The court below held that the building inspector "made a mistake."
*159 Construction began on November 4, 1970, and continued until March 10, 1971. At that time, the building inspector, alerted by the Hills, discovered that a mistake had been made in the issuance of the permit, and revoked it because it has been issued in violation of the ordinance. He told the Cerans that he had forgotten to let them know that they needed a variance when he issued the permit.
As the trial court found, substantial work had been completed between November and March. The foundation had been laid and inspected and approved by the building inspector. The rough framing of the rooms and garage area had been completed, the roof had been completely rough-sheathed with plyscore and partially shingled, the side of the garage and the rear of the addition had been rough-sheathed with plyscore. Of an overall estimated cost of $6,000, the Cerans had actually spent $3,500.
When the building inspector advised the Cerans of the revocation of the permit, they promptly applied for a variance and, after hearing, it was granted by the Board of Adjustment.
The trial court also found that if the Cerans were compelled to comply with the seven foot yard requirement the removal of the three feet of the garage would not only be at an additional cost of $1,500, but would also effectively deprive them of the use of the remaining structure (11 feet) for garage purposes. In recommending the variance, the Board of Adjustment found that many of the homes in the immediate area involved had side yards of less than seven feet. The trial court found that there were 40 homes with side yards less than seven feet on both sides and 38 homes where the side yards were less than seven feet on one side. Three of these incursions into the required side yard area were made pursuant to variances granted by the Board of Adjustment, two in 1967 and one in 1970.
Appellants argue that the building inspector "erroneously represented" that the minimum side yard requirement was four feet when in fact it was seven feet but, says appellant's *160 brief, "* * * in so making this good faith representation, no interpretation of the ordinance was necessary * * *" and therefore estoppel may not be applied, citing Jantausch v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957), and Bonsall v. Township of Mendham, 116 N.J. Super. 337 (App. Div. 1971), certif. denied 59 N.J. 529 (1971).
What must be decided here, with all semantic obfuscations aside, is simply this  when a building inspector, in good faith, but with mistaken judgment, issues a permit in violation of a zoning ordinance, may estoppel or laches operate in favor of one relying in good faith on the permit?
In our view, appellants misinterpret Jantausch. There, by way of dictum, the court alluded to three categories of cases wherein the issue of estoppel against a municipality may arise with respect to the issuance of permits. The court did not subscribe to any one of the categories, but merely described them: (1) where a permit is regularly issued in accordance with the ordinance, it may not be revoked after reliance by the permittee unless there be fraud; (2) where there is no semblance of compliance wtih or authorization in the ordinance, the deficiency is deemed jurisdictional and estoppel cannot be asserted (hereafter called the "void" class); and (3) the "intermediate situation" where the administrative official "* * * in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon * * *." Id. at 94. [Emphasis added] (hereafter called the "voidable" class). In the latter instance, said the court in Jantausch, the cases permit estoppel to operate.
Plaintiff argues that since the building inspector herein had no authority under the ordinance to issue the permit and therefore erroneously issued it to defendants, the action comes within category (2); i.e., the issuance of the permit was totally void ab initio and estoppel may not spring therefrom even though there was reliance thereon by the permittee.
*161 We do not agree. A reading of the cases cited by the court in Jantausch as being examples of the "void" class demonstrates what is meant by that characterization. Thus in V.F. Zahodiakin &c., Corp. v. Bd. of Adjustment, Summit, 8 N.J. 386 (1952), it was said of the "void" action under review that it was "not professed to be an exercise of the statutory power" (Id. at 393); there was "no pretense of adherence to the statutory principle" (Id. at 394); it was "not within the province of the local authority" (Id. at 395); and it was "not a mere irregular exercise of the quasi-judicial function residing in the local authority." (Id.). In Zahodiakin, Justice Heher cited, among other cases, Bauer v. City of Newark, 7 N.J. 426 (1951), as illustrative of what he meant by an act so ultra vires as to be coram non judice and "utterly void," and thus beyond the power of resuscitation by reason of estoppel. In Bauer, Justice Heher described the distinction between an act which a municipality is "utterly without capacity to make under any and all circumstances" and an act "merely voidable for want of authority or for an irregularity in the exercise of the contractual power." Id. at 434.
In Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955), the Supreme Court, again through Justice Heher, said:
There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice. [Id. at 504].
Further, in Jantausch, Judge Weintraub adverted to Marini v. Borough of Wanaque, 37 N.J. Super. 32 at 40 (App. Div. 1955), wherein the court, speaking of what it assumed to be an unauthorized issuance of a building permit, said "If anything, it was a mistaken or irregular exercise of a ministerial function," rather than an action which is utterly *162 void as in V.F. Zahodiakin &c., Corp., supra, and, as it was characterized in Donovan v. Gabriel and Gruber, 57 N.J. Super. 542, 547 (App. Div. 1959): "* * * a mistaken action on the part of the building inspector * * *" and therefore not "void."
Thus the essential intent of Jantausch was that, if a permit was "irregularly" issued, but in good faith and within the ambit of the building inspector's duty, it is not "utterly void" and estoppel is permissible with proper good faith reliance thereon. And so Jantausch was interpreted in Schultze v. Wilson, 54 N.J. Super. 309 (App. Div.), certif. denied 29 N.J. 511 (1959), where the court said at 323-324:
Although Judge Weintraub was concerned with an ordinance situation and not a building permit case, a reasonable interpretation of his "intermediate" category applies to the instant situation where the officer issues a permit "within the ambit of his duty" in the utmost good faith (there is no proof to the contrary herein) and the property owner accepts it in good faith and relies thereon. As the permit was within the jurisdiction of the inspector to issue even if it was issued irregularly, it was not utterly void. [Emphasis added].
So here, the issuance of the building permit to the Cerans was within the province of the general duties of the building inspector. It was not an act which he was "without capacity to make under any and all circumstances." (Emphasis added). Rather it was a "mistaken or irregular exercise of a ministerial function" (Marini at 40) and "within the purview of his jurisdiction." (Donovan at 547). Therefore it came within the "intermediate situation" referred to in Jantausch and estoppel is not precluded.
By way of analogy, in the area of municipal contracts, a contract which a municipality is "utterly without capacity to make under any and all circumstances" is void. One in which there is no lack of power in the municipality but in which there has been a mere "irregular exercise" of the power, is voidable. In the former category there can be no recovery on the contract. In the latter class there can be recovery upon the theory that one contracting with a public *163 body, under such circumstances, is not obliged to scrutinize, at his peril, the corporate proceedings. Bauer v. City of Newark, supra; Campbell v. City of Hackensack, 115 N.J.L. 209 (E. & A. 1935), and cases cited therein. And here Cerans had a right to rely on the validity of the permit issued to them by the building inspector who had the ostensible power to issue it. Realistically, and in practical recognition of what an ordinary citizen would do in this circumstance, is that not so?
Plaintiffs' contention that it is only when a permit is validly issued that estoppel applies is not well taken. In Jantausch, Judge Weintraub cited as an example of the "intermediate" class the case of Kurowski v. Bd. of Adjustment of Bayonne, 11 N.J. Super. 433 (App Div. 1951). There the building department had no authority to issue a permit for the erection of a storage building in an "A" residence zone. Yet the Appellate Division, adopting verbatim an opinion of then Judge Brennan, affirmed the grant of a variance for the prohibited use. And in Marini v. Borough of Wanaque, supra, also cited in Jantausch as in the "intermediate" class, the court, without passing upon the validity of the building permit involved, dismissed the complaint of Marini, next door neighbor of defendant Gordon and holder of the permit, on the grounds of limitations and laches. The court said:
Finally, we think laches additionally bars plaintiff's way. We are satisfied that he knew what was going on in respect to this structure and withheld his legal fire during a period in which he knew or had every reason to know that a substantial sum of money was being invested in the improvement of this property. [citing cases]. We are aware of the policy that laches should be invoked with hesitation against a taxpayer and citizen vindicating a public right, Garrou v. Teaneck Tryon Co., supra (11 N.J. at pages 306, 307, 94 A.2d, at pages 338, 339), but we deem the application of laches plainly indicated in the present case. [Id. at 41].
The same principle of laches applies against the Hills here. Cf. N.J.S.A. 40:55-42.
*164 Finally we conceive that the additional equitable doctrine of "relative hardship" applies here. Cf. Gilpin v. Jacob Ellis Realties, Inc., 47 N.J. Super. 26 (App. Div. 1957); Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461 (App. Div.), certif. denied 43 N.J. 353 (1964). If plaintiffs were to succeed, defendants would be compelled to destroy the improvements they had made before plaintiffs warned them of the possible violation. Id. at 476. That would be a severe hardship to defendants. Over and above the $3,500 already expended, it would cost defendants an additional $1,500, and would leave the new garage too small for its intended use. On the other hand, plaintiffs have suffered no discernible damage by the proposed construction and in fact the Board of Adjustment found that the side yard violation is consistent with many properties in the neighborhood. The resulting "gross inequity" warrants operation of estoppel against plaintiffs. Bonsall v. Township of Mendham, supra, 116 N.J. Super. at 346. While plaintiffs attempt to distinguish Bonsall from the instant situation, we read it as being distinguishable without a difference under the equitable principles here appropriate. Bonsall at 346.
Plaintiffs would have us ignore the "* * * strong recent trend towards the application of equitable principles of estoppel against public bodies where the interests of justice, morality and common fairness clearly dictate that course." Gruber v. Mayor and Tp. Comm. of Raritan Tp., 39 N.J. 1, 13 (1962). The latter statement of our Supreme Court in Gruber was a reference to the Appellate Division opinion in the same case, appearing at 73 N.J. Super. 120. There Judge Gaulkin, for the Appellate Division, had pointed out that, even though the action of the municipality was truly void, equitable principles "akin to estoppel" had been applied in Hilton Acres v. Klein, 35 N.J. 570 (1961), and Tremarco Corporation v. Garzio, 32 N.J. 448 (1960). Gruber, supra, 73 N.J. Super. at 126-128. The Supreme Court, in affirming the Appellate Division decision in Gruber, adopted this philosophy. In simple language, estoppel will *165 be applied against a municipality in the interest of equity and essential justice. Morality and common fairness clearly dictate that course. Gruber, supra, 39 N.J. at 12-17; see also Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 131 (1965); 405 Monroe Co. v. Asbury Park, 40 N.J. 457 (1963).
All of those concepts mandate judgment in favor of defendants. If estoppel and laches apply against the municipality so much the more so against plaintiffs, even though they be deemed to be acting vicariously for the municipality.
The judgment in favor of defendants is affirmed.
FRITZ, J.A.D. (concurring).
With stout conviction buttressed by the language of Gruber v. Mayor and Tp. Comm. of Raritan Tp., 39 N.J. 1 (1962), I firmly believe that estoppel is and should be the proud champion of justice, morality, and common fairness. Consequently, I find it difficult, in the factual milieu of this case, to disagree with the majority in its application of the doctrine. Basic and essential justice, morality and common fairness here insist absolutely that defendants Ceran be permitted to retain the vindication won in the court below.
But even this clear call fails to persuade me that in-attention to (at best  and at worst, total disregard for) the apparent, plain, and unambiguous language of the terms of the zoning ordinance by the building inspector in the undertaking of his duties should generate an estoppel against the municipality, and this despite the so-called bona fides of the official and the lack of fraud. My reserve in this regard has a double predicate: First, a rule of estoppel thus bottomed might well serve to encourage fraud and reward indolence and intellectual indifference, all at the expense of the integrity of the zoning ordinance of a municipality. Second, reliance is an essential element of estoppel, Clark v. Judge, 84 N.J. Super. 35 (Chan. Div. 1964), aff'd o.b. 44 N.J. 550 (1965), and why should such a reliance be tolerated when, simply put, the apparent, plain, and unambiguous *166 zoning proscription is readily available to be seen by the applicant? Proponents for such a rule ask, as the majority here seems to ask, why the "ordinary citizen," not trained in the law, should be required to doubt the correctness of the building inspector, even to the degree of simply checking out his authority against the ordinance. The answer to this inquiry can only be found in a weighing, as a matter of policy, of the difficulty thus imposed on a citizen on the one hand, and the potential for debilitation of the zoning plan (with the concomitant effect on the property of all conforming owners) on the other. On my own scales I see greater and more far reaching dangers if blind reliance by the applying owner is sanctioned. I would eschew reliance in such a situation.
I freely confess that I do not find the situation to be black and white. Considering that an estoppel against the municipality is an infringement to a greater or lesser degree on the rights (and reliances) of each of its individual citizens, the equities are fairly balanced. The case for estoppel made out in the opinion of the majority is engagingly persuasive. But in respectful disagreement with the conclusion of my brethren I think it is not yet the law. In Esso Standard Oil Co. v. North Bergen Twp., 50 N.J. Super. 90 (App. Div. 1958) proximity to a school in the case of a service station was the defect rather than, as here, proximity to a side line in the case of a house. There the permit was issued "through honest mistake," and there was reliance and there were expenditures not capable of recapture. This court held no estoppel. The decision was cited in Saddle River County Day School v. Saddle River, 51 N.J. Super. 589, 606 (App. Div. 1958), aff'd o.b. 29 N.J. 468 (1959) as support for the proposition:
It is now definitely settled in our law that a municipality is not estopped from revoking a permit invalidly issued even where the invalidity was not the fault of the applicant and the latter had proceeded to do some work in reliance thereon.
*167 To the same effect is Adler v. Dept. of Parks, Irvington, 20 N.J. Super. 240 (App. Div. 1952) and Giordano v. Dumont, 137 N.J.L. 740 (1948), the latter expressly charging the owner with notice, actual or constructive, of the invalidity of the permit. The policy considerations involved in that deposition of duty, balanced on the delicate scales to which I adverted above, seem to me to commend the Giordano rule.
Of the greatest concern to me here, however, is the broad sweep of the majority brush in its effort to employ this hard facts case to make applicable and to resolve for all time  as it someday must certainly be resolved  the "intermediate situation" left undecided in Jantausch v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957). As there described in the Law Division opinion, that is the situation, between the opposite extremes of a clearly valid and a clearly invalid permit, which eventuates when "the administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon[.]" (41 N.J. Super. at 94.)
That the matter at hand lies outside the question thus defined is illustrated by the simple inquiry: What can there possibly be about an express seven-foot side line restriction which requires any interpretation, or allows as a debatable interpretation the theory that four feet is good enough?
Nor does the majority opinion here modify the Jantausch inquiry sufficiently to bring this case within the issue, because after rejecting "semantic obfuscations" the majority still employs, as a component in the question formula, the "mistaken judgment" of the building inspector. I humbly suggest that "judgment" was no more a necessary element of the decisional process of the building inspector here than was that process merely a "mistaken or irregular exercise of ministerial function." Seven feet may well be seven feet one inch or six feet eleven depending upon whose ruler the building inspector's discretion chooses. But I cannot see the overlooking *168 of a seven foot restriction for a four foot permit as a matter of judgment or an interpretation which even most generously might be regarded as debatable.
If, on the other hand, the majority construes Jantausch to require nothing more than good faith on the part of both the building inspector and the owner, coupled of course with reliance and detriment, then I must respectfully disagree.
A more appropriate question, in Jantausch terms, might be whether the defect here  the differential between the four and seven feet  was a sufficient demonstration of "no semblance of compliance with or authorization" to constitute a jurisdictional impediment at the one Jantausch extreme and in accordance with the cases there cited. For this, too, is a hard question the answer to which in my view is not simply reached as being at the easy extreme and certain proscription. It seems to me in the appropriate case, the law could say in good conscience that the act of the building inspector was in fact ultra vires but, all things considered, not to a fatal extent.[1] As against an anticipated complaint that such a rule is extraordinary and perhaps akin to being only partly dead, I suggest that, as our reported opinions confirm, these are almost always hard cases requiring an extraordinary and imaginative approach in the interest of justice. Insistence on fixed standards and intransigence would isolate this field from the salutary ongoing development which is both the hallmark and the strength of our common law.
But in my view such pathfinding is not necessary here. I would sustain the result below  and I again candidly acknowledge that elemental justice, morality, and common fairness seem to me in the circumstances of this case absolutely *169 to require that result  on the obvious validity of the variance.
I have no doubt that the prerequisites prescribed by N.J.S.A. 40:55-39(c) are sufficiently found in the resolution of the Board of Adjustment, and have adequate support in the record. Additionally, it is obvious that the so-called negative criteria, i.e., those necessary to assure that the relief granted is without substantial detriment to the public good and does not substantially impair the intent and purpose of the zone plan and zoning ordinance, have been satisfied. The plethora of homes with side yards of less than seven feet on both sides, to say nothing of the additional homes where one side yard was less than seven feet (and some of the foregoing the result of reasonably recent variances), alone seems to satisfy the negative criteria.
I have no doubt that a so-called hardship case involving a subsection (c) variance cannot be supported solely by difficulties "personal to the owner * * * unrelated to the physical characteristics of the land * * *." Isko v. Planning Board, Tp. of Livingston, 51 N.J. 162, 174 (1968). Nor do I labor under a misimpression that a hardship created by acts of the owner constitutes the type of thing for which a subsection (c) hardship variance is designed. Place v. Board of Adjustment of Saddle River, 42 N.J. 324, 331 (1964). (However, it should be observed in Place that construction of the prohibited building was commenced without a building permit.) On the other hand, I think we need not, and in this case should not, limit the situation for variances under subsection (c) to so-called hardship cases. A completely reasonable interpretation of the intent of the legislature as it might well be derived from a consideration of the several disjunctives in the statute suggests that while topographic conditions and physical attributes are the prime bases for a subsection (c) variance, "other extraordinary and exceptional situation[s] or condition[s] of such piece of property" will undergird such a variance if the result otherwise were to be "peculiar and exceptional practical difficulties to" the owner *170 of such property. It is to be observed that the language employed in the statute distinguishes by disjunctive between situations and conditions of the property and distinguishes between practical difficulties and exceptional and undue hardship. I am of the opinion that this play in the joints of the machine was intentionally designed by a farseeing legislature to accommodate precisely the type of situations here presented. Through no fault of the owner (and I am speaking of the owner's activities; I have not returned to a consideration of estoppel), his land is now burdened with structural change that creates an "extraordinary and exceptional situation" resulting in "peculiar and exceptional practical difficulties" to him.
For this reason I agree with the majority that the determination below should be affirmed.
NOTES
[1] Perhaps this is really all the majority opinion is suggesting. If so, I am in hearty accord. But I do not believe this requires any estoppel.