143 N.J. Super. 484 (1976)
363 A.2d 913
JESSE A. HOWLAND & SONS, INC., T/A ALLIED TRANSIT MIX, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE BOROUGH OF FREEHOLD, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND CHARLES NOVOTNY, BUILDING INSPECTOR OF THE BOROUGH OF FREEHOLD; AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF FREEHOLD, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1976.
Decided August 11, 1976.
*485 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Richard T. O'Connor argued the cause for appellant (Messrs. Cerrato, O'Connor, Mehr & Saker, attorneys).
Mr. Ronald Berman argued the cause for respondent (Messrs. Warren, Goldberg & Berman, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
This appeal by the Borough of Freehold from an adverse judgment following an action in lieu of prerogative writs in a zoning matter necessitates further *486 consideration of our determination in Hill v. Eatontown Bd. of Adj., 122 N.J. Super. 156 (App. Div. 1972). A searching look at Hill is required because the trial judge in the matter before us, while in announced disagreement with that which he conceived to be the holding in Hill, correctly believed himself obligated to follow that holding. Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961).
The facts involved here are not the subject of any substantial dispute. Jesse A. Howland & Sons, Inc., trading as Allied Transit Mix, Inc. (Howland), and its predecessor or predecessors, have operated a concrete plant in the Borough of Freehold for many years. Prior to 1973 the Freehold zoning ordinance was amended and concrete plants such as that in question were excluded. Accordingly, the Howland use became one permitted only because of its prior nonconforming use status. In the fall of 1973 Howland decided upon some further construction at the site. It applied for a building permit, with plans contemplating a new "batch plant and control building." On November 30, 1973 the building inspector issued a building permit and Howland immediately commenced construction. By March 1974 Freehold had a different building inspector who routinely inspected the progress until, in April 1974, apparently following complaint relating to the placement of certain concrete blocks, he stopped the work and rescinded the building permit. Testimony advises us that at that time the work was 90-95% complete and that "around $168,000" was either spent or committed.
Meetings between company and municipal officials and other interested parties followed. While there is considerable disparity as to what was then said or promised, it is clear that a site plan was presented by Howland to the planning board for its approval. The approval, incorporated in a resolution of the planning board dated June 19, 1974, specifically required Howland to obtain a variance from the Freehold board of adjustment.
*487 Howland commenced this litigation to set aside the revocation of the building permit on July 3, 1974. In the meantime it applied to the board of adjustment for a use variance. On September 23, 1974 the board of adjustment denied that application. An appeal from that determination was consolidated with the then pending action in lieu of prerogative writs challenging the revocation of the building permit.
The judgment below directed reinstatement of the building permit.
In the path he travelled in arriving at his determination the trial judge analyzed the problems carefully. At the pretrial conference he defined the issues as follows:
a. Was the denial of the Board of Adjustment to recommend a use variance arbitrary, capricious and unreasonable?
b. Should the Court direct the recommendation for a variance?
c. Is there an expansion of operations or facilities of a nonconforming user as to the area of the property?
d. Is the construction of the concrete batch plant an enlargement of a nonconforming use?
e. Is the construction of the control building an enlargement of a nonconforming use?
f. Is the construction of appurtenant facilities an enlargement of a nonconforming use?
g. Does the proposed new facility involve a prohibited increase in the intensity of the use?
h. Is the assertion that an extension of a nonconforming use will be allegedly less harmful to the neighborhood relevant?
i. Was the issuance of the building permit by the building inspector in good faith and by reason of an erroneous and debatable interpretation of an ordinance?
j. Was the building permit issued contrary to the zoning ordinance?
k. Was the building permit void ab initio?
l. Did the building permit allow the construction of the control building and concrete plant?
m. Did the property owner rely in "good faith" upon the building permit?
n. Is the Borough estopped from revoking the building permit?
o. Were the findings of fact of the Board of Adjustment based upon credible evidence adduced before the Board?
p. Did the resolution of the Board of Adjustment set forth adequate findings of fact and conclusions of law to support the denial?
After trial the judge synthesized these into the three exclusive major inquiries: (1) Was the proposed use an illegal *488 expansion of a prior nonconforming use (for if it was not, no variance was necessary and the rescission of the building permit was unsupportable)? (2) If a variance was necessary, did the applicant demonstrate the indispensable "special reasons"? (3) Was the municipality estopped from rescinding the building permit its building inspector had issued? Confident that the rule of estoppel enunciated in Hill, supra, left him without alternative, and that his determination would turn on that (as it did), he glossed over the first two of these inquiries as far as findings of fact and conclusions of law are concerned.
He was indecisive with regard to the matter of a variance. He said:
It is questionable whether plaintiff is entitled to a use variance. There would appear to have been no demonstration of the special reasons contemplated by N.J.S.A. 40:55-39(d). * * *
Here, I cannot say from the record clearly that the replacement of the batch plant and control building will minimize the discordant use. Plaintiff's motive for the replacement and modernization would seem to be financial. The air pollution devices could be placed on the existing batch plant, and the court should not in the first instance say that the fact that the new facility will be quieter should suffice to require the granting of a variance.
He did conclude that, in any event, the "findings of fact [of the board of adjustment] are plainly inadequate."
With respect to the nature of the new use, the judge expressly eschewed any finding as to whether the new facility was larger than the old, and implicitly if not expressly, refused to make a finding on whether the new use constituted an illegal expansion of a prior nonconforming use. He was given reason to believe, by Hill, that "this case is not going to turn on that issue."
Then he concluded that the rule of law enunciated by Hill is that "in order for estoppel to arise nothing more is required on the part of both the building inspector and the applicant for a permit than good faith coupled with reliance and detriment on the part of the applicant." Believing *489 this, although frankly disagreeing with it, he concluded that an estoppel was here manifested and the judgment adverse to Freehold followed.
With an expression of empathy for a trial judge who must find it difficult to anticipate changes in judicial overview, and of our concern for the complexity and difficulty of the basic problem here involved which, it would seem, must ultimately be the subject of resolution by our highest court, we reverse.
We do not doubt that the trial judge correctly read the majority opinion in Hill. But we are persuaded to the differing view of the concurrence in Hill, for the reasons there stated, and accordingly believe that the "intermediate situation" left undecided in Jantausch v. Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957) should not in any case be resolved exclusively on the question of whether the building permit was issued "in good faith" by a building inspector acting "within the ambit of [his] duty" as long as there is "proper good faith reliance thereon." Hill, supra, 122 N.J. Super. at 162.
The requirement we would add (which is suggested in the rationale of Jantausch, by reference, albeit cautionary, to Adler v. Irvington Dept. of Parks, 20 N.J. Super. 240 (App. Div. 1952)) is the necessity for the appearance of an issue of construction of the zoning ordinance or statute, which, although ultimately not too debatable, yet was, when the permit was issued, sufficiently substantial to render doubtful a charge that the administrative official acted without any reasonable basis or that the owner proceeded without good faith. 41 N.J. Super. at 94. This, we believe, would go a long way toward defining "[t]he line between acceptance of the doctrine of estoppel against a municipal corporation and the inherent aversion thereto," characterized by the "dichotomy created by the decision in Freeman v. Hague, 106 N.J.L. 137 (E. & A. 1929) and such cases as * * * Adler v. Department of Parks * * *." Tillberg v. Kearny *490 Tp., 103 N.J. Super. 324, 335 (Law Div. 1968).[1] We point out that Adler preceded Gruber v. Raritan Tp. Mayor and Tp. Comm., 39 N.J. 1 (1962), in point of time. We are persuaded as well that such a flexible formulation satisfies the concern of Tremarco Corp. v. Garzio, 32 N.J. 448 (1960), an opinion after Adler which totally ignored that case and advised:
There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and quantum of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality through planning and the implementation of that scheme through zoning "to `make, ordain and establish all manner of wholesome and of reasonable laws, not repugnant to the Constitution,' as may be deemed to be `for the good and welfare of the commonwealth, and all the subjects of the same.'" Roselle v. Wright, 21 N.J. 400, 408-409 (1956). * * * [at 457]
If the appearance of some reasonable basis for issuance of the permit is what was meant by the majority in Hill when they spoke of the issuance of a building permit "in good faith," then our departure from Hill may be more apparent than real.
So we reverse and remand for findings and conclusions with respect to the issues as we have now defined them. We do not suggest by this reversal any wrongness in the result achieved. We determine only that insofar as the issue of estoppel is concerned we do not have findings which we may examine to see if the building inspector had any apparently reasonable basis under the zoning ordinance upon which to bottom issue of the permit, regardless of how insubstantial that basis may now appear. Inasmuch as the matter was heard subsequent to our determination in Hill, *491 we believe the parties should now be entitled to present such additional evidence as is relevant at a new hearing which may, of course, include the old record either by stipulation or, absent that, by a judicial determination on the motion of either party.
Should the estoppel issue be decided in favor of the municipality, then it will be necessary for the court below to particularize its findings and conclusions relating to (a) the nature and extent of the proposed use vis-a-vis the prior nonconforming use and (b) the propriety of the determination of the board of adjustment in connection with the application for a variance.[2]
Reversed and remanded. We do not retain jurisdiction. No costs.
NOTES
[1] Interestingly, this perception in Tillberg was authored by Judge Lynch, then sitting in the Law Division, who later was to write the majority opinion in Hill.
[2] We have not lost sight of the conclusion by the trial judge that the "findings of fact [of the board of adjustment] are plainly inadequate." Nor do we express any view with regard to this conclusion. We simply do not reach it in view of our remand on the estoppel issue, thus permitting a fresh look by the judge below after the new hearing, if necessary.