**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0662-17T3

BELMONT CAR WASH, LLC,

     Plaintiff-Appellant,

v.

PLANNING AND ZONING
BOARD OF THE BOROUGH
OF HALEDON,

     Defendant-Respondent.

_____

            Submitted February 5, 2019 – Decided March 29, 2019

            Before Judges Gilson and Natali.

            On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2247-16.

            De Marco & De Marco, attorneys for appellant (Michael P. De Marco, on the briefs).

            Fontanella, Benevento, Galluccio & Smith, attorneys for respondent (Anthony Benevento, on the brief).

PER CURIAM

Plaintiff Belmont Car Wash, LLC (Belmont) appeals from an April 11, 2017 order entered after a bench trial denying the relief requested in its complaint in lieu of prerogative writs. The complaint sought to overturn the denial of its application to the Planning and Zoning Board of the Borough of Haledon (the Board) for a certificate of compliance and occupancy to be given to a new owner in connection with the sale of the business. Belmont argues that its current owner and several previous owners were all granted certificates of compliance and occupancy and, therefore, the Board is estopped from denying the certificate to the proposed new owner. The trial court rejected that argument. We agree with the trial court and affirm.

I.

Belmont is a car wash business located at 450 Belmont Avenue in Haledon. Rajni Thiara currently owns Belmont. Belmont does not own the actual property; rather, Joseph Killion owns the property.

In February 1994, Pedro Lopez sought and obtained a resolution from the Board allowing him to operate a car wash at the location. The 1994 resolution granted Lopez use, bulk, and parking variances subject to certain conditions. Lopez owned an Exxon station located approximately one block from the proposed car wash and the conditions included the requirement that cars be

A-0662-17T3

parked at the Exxon station and that all business transactions be conducted at the Exxon station.

In that regard, the 1994 resolution granted the variances subject to eleven conditions, including:

(a)    all work, including cleaning and detailing of cars, was to be done inside the building;

(b)    cars waiting to be cleaned were not to be parked on the street; rather, they were to be parked at the Exxon station;

(c)    all employee cars were also to be parked at the Exxon station; and

(d)    all business transactions, except for the washing and detailing of cars, were to be done at the Exxon station.

In 2005, Lopez sold Belmont to Mark Walker.  Walker only purchased the car wash and not the Exxon station.  At the time of the purchase, Walker applied for and was granted a certificate of occupancy by the Borough's code enforcement officer.  Thereafter, Belmont was sold three times, including twice in 2008 and once in 2011.  Each time, the new owner applied for and was issued a certificate of occupancy.  The certificate of occupancy granted in 2011 was given to Belmont's current owner.

A-0662-17T3

In 2015, Belmont made application for a certificate of compliance and occupancy in connection with the proposed sale of the car wash business to a third-party purchaser. The Borough's zoning official and attorney advised Belmont that a certificate of occupancy would not be granted unless the business came into compliance with the 1994 variance. Accordingly, Belmont was directed to apply to the Board.

Belmont made the application to the Board for a certificate of compliance and occupancy. A public hearing concerning that application was held on April 7, 2016. At the hearing, Belmont, through its attorney, argued that the Board was estopped from denying the certificate to the proposed new owner because the Borough had not enforced the conditions of the 1994 variance for over twenty years. The Board rejected that argument and, on May 5, 2016, the Board adopted a resolution denying Belmont's application. The resolution noted that Belmont had been advised in February 2015 that the 1994 variance was the only authority giving Belmont the right to operate the car wash business and if Belmont sought modifications from the conditions of the 1994 variance, it would have to obtain those modifications from the Board. The Board then noted that granting modifications from those conditions did not advance the purpose of the

4

Borough's land use laws and zoning ordinances. Therefore, the Board denied the application.

On June 20, 2016, Belmont filed a complaint against the Board asserting two counts. First, it sought an action in lieu of prerogative writs to compel the Board to grant the certificate. Second, it alleged that the Board had denied its application in violation of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21. The Board filed an answer and, thereafter, the parties agreed to initially have the court address Belmont's claim for an action in lieu of prerogative writs.

The trial court received submissions and held a bench trial on that issue. On April 11, 2017, the trial court found in favor of defendants and thereby refused to overturn the Board's resolution denying Belmont's application. The court explained its decision on the record and in a written opinion.

Before the trial court, Belmont focused its arguments on the contention that the Board was estopped from denying the certificate to a new owner. The trial court determined that the Board was estopped from seeking to prevent the current owner from operating the car wash business. The court also determined, however, that the Board was not estopped from denying the application to issue a certificate that would allow the car wash to be operated by a new owner.

In August 2017, the parties entered into a stipulation dismissing the remaining count of Belmont's complaint, which had alleged a violation of OPMA.[1] Belmont now appeals the order issued on April 11, 2017, denying the relief it sought in the count asserting a complaint in lieu of prerogative writs.

II.

On appeal, Belmont makes one argument: the Board was estopped from refusing to issue a certificate of compliance and occupancy to the purchaser of its business. Specifically, Belmont contends that by issuing certificates to its current owner and three prior owners without enforcing the conditions of the 1994 variance, equity compels the Board to issue a certificate to the new purchaser of Belmont. We disagree.

A zoning "board's decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). Accordingly, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect

---

[1] The stipulation actually refers to count one of the complaint being dismissed. Nevertheless, both parties acknowledged that count one was dismissed by the trial court and count two of the complaint was dismissed by stipulation.

a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

Under the doctrine of estoppel, an entity "may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Welsh v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 367, 376 (App. Div. 2016) (quoting Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000)). Estoppel, however, is invoked against municipalities sparingly, and only in compelling circumstances, "where the interests of justice, morality and common fairness clearly dictate that course." Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 152 (App. Div. 2013) (quoting Gruber v. Mayor of Raritan, 39 N.J. 1, 13 (1962)).

Here, Belmont argues that its current owner relied on the fact that he and several other prior owners were granted certificates of occupancy to operate the car wash without complying with the conditions of the 1994 variance. Thus, he contends that the refusal to issue a certificate to the new purchaser would effectively result in compelling him to continue to operate the business without the prospect of being able to sell it. Moreover, he asserts that this inequity is

7

exacerbated because the car wash business and the Exxon station are no longer under common ownership and, therefore, he cannot comply with the conditions of the 1994 variance.

The trial court reasoned that although the Board and Borough had not enforced the conditions for over twenty years, the lack of enforcement did not act as a permanent estoppel. In support of that position, the trial court noted that the Borough had submitted evidence that representatives of the Borough had written to prior owners of Belmont, and to its current owner, pointing out that the car wash was not in compliance with the conditions of the 1994 variance. While there is nothing in the record to indicate that the Board or Borough took any enforcement actions, that correspondence indicated that the Board and Borough were not waiving compliance with the conditions of the 1994 variance.

Moreover, there is nothing in the certificates granted to the current owner or any of the three prior owners of Belmont stating that the Board was waiving the conditions of the 1994 variance. In that regard, all four of the certificates of occupancy issued in 2005, 2008, and 2011 simply give the owner of Belmont the right to operate a car wash. None of those certificates state that the conditions of the 1994 variance were being waived. Accordingly, we agree with

8

the trial court that the doctrine of estoppel does not apply to compel the Board to issue a new certificate of occupancy to a new owner.

We note that this case does not involve the Board or a zoning representative acting without authority. Belmont and the Board did not contend that the Board did not originally have the proper authority to grant the 1994 variance with conditions. The Board also does not argue that the certificates of occupancy issued in 2005, 2008, and 2011 were improperly granted. Instead, this is a situation where variances were granted on conditions, and both the variances and conditions were then memorialized. The conditions, however, have not been complied with. Consequently, even if the variance runs with the land, it only does so based on the conditions attached to that variance. See Aldrich v. Schwartz, 258 N.J. Super. 300, 308-09 (App. Div. 1992) ("If subsequent owners are entitled to the benefits of [a] variance and the value it adds to the property, . . . they should enjoy those benefits limited by any restrictions which were lawfully attached as conditions, subject to current zoning agency relief."). In short, neither the Board nor the Borough took action that could be deemed to be a permanent waiver of the right to enforce the conditions of the 1994 variance.

In support of its argument for equitable estoppel, Belmont cites and relies on our decision in Hill v. Bd. of Adjustment, 122 N.J. Super. 156 (App. Div. 1972). Our decision in Hill, however, is distinguishable. In Hill, the question before the court was whether or not a variance granted by a board of adjustment from a seven-foot side yard requirement should be affirmed. See id. at 158. In affirming, the court took into consideration that the building inspector had mistakenly issued the building permit for the construction of a garage, which would violate the side yard requirement, but the construction was almost entirely completed in reliance on the permit. Id. at 159. Accordingly, we held that the permit was not void and the board could be estopped because the property owner operated in good faith reliance on the building permit. Id. at 162. Here, as we have already noted, neither the current owner nor any prior owners applied for modifications of the conditions of the 1994 variance.

Finally, as previously noted, the trial court held that the doctrine of estoppel does prevent the Board and Borough from enforcing the conditions of the 1994 variance against Belmont's current owner. We do not address that issue since only Belmont appealed the trial court's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0662-17T3