DR. HAROLD WINN, PLAINTIFF, v. CITY OF MARGATE, DEFENDANT, AND MORTON SHIEKMAN, ROBERTA SHIEKMAN, LEONARD STOMACHIN, JUDITH STOMACHIN, DR. MARTIN CASSETT AND ADA CASSETT, INTERVENORS.

Superior Court of New Jersey
Law Division Atlantic County

Decided June 27, 1985.

*Emanuel L. Levin* for plaintiff.

*David Fitzsimons* for defendant City of Margate (*Fitzsimons & Baylinson,* attorneys).

*Jack Plackter* for intervenors (*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys).

GIBSON, J.S.C.

This is a prerogative writ action in which plaintiff seeks to restrain the City of Margate from enforcing that portion of its zoning code regarding off-street parking requirements for a professional office being operated out of a home. There are two grounds asserted to support this relief. Firstly, it is argued that the city is estopped from claiming that plaintiff is in violation of the code because of the issuance of a building permit for the premises and a prior oral opinion by the building inspector that the intended use was permitted. Secondly, plaintiff claims that a denial of his variance application by the zoning board of the City of Margate was arbitrary and should be overturned. This matter initially came before the court in October 1984; at that time plaintiff sought and received a temporary restraint against a pending municipal court hearing regarding a zoning code complaint arising out of the above use. On the return day of the order to show cause the injunction was continued and a plenary hearing was scheduled on an expedited basis. The result of the plenary hearing was the issuance of a preliminary injunction pending action by the Margate Board of Adjustment on plaintiff's variance application. The zoning board met on December 6, 1984 at which time there was a unanimous decision denying the variance. Although there was no formal appeal of that denial all issues were ultimately returned to this court for review.

A final hearing was conducted here on May 14, 1985 at which time all counsel agreed that no further testimony was necessary. It was stipulated then that the ruling of the court should be based on the testimony previously elicited, the presentation before the zoning board and the briefs submitted. Following oral argument the court reserved decision so that a transcript of the October 1984 hearing could be obtained and also to allow further input from counsel on certain of the legal issues. The

following findings of fact and conclusions of law may now be made.

Plaintiff, Harold Winn, is a physician and a board certified psychiatrist licensed to practice psychiatry in the State of New Jersey. In June 1984 he acquired the property known as 103 South Mansfield Avenue, Margate City, New Jersey from Kenneth R. and Rose Sharp pursuant to a written contract dated March 24, 1984. The property is located in a residential zone within the beach block of Margate. It is now occupied by plaintiff and contains a professional office from which he conducts his practice. In December 1983, prior to the purchase, the former owner applied for and received a building permit for certain minor renovations from the city building inspector, Donald Sullivan. Sharp represented at that time that he intended to repair and/or replace certain plaster with dry-wall and also to replace front and side windows as well as kitchen cabinets. Since he was not a licensed contractor, in order to qualify for a construction permit pursuant to *N.J.A.C.* 5:23–2.-5(p), he certified that he intended to do all the design, construction, plumbing and electrical work himself and that he would occupy the premises for his own use as a residence. A few months later, however, he entered into negotiations with plaintiff regarding the sale of the premises. Plaintiff let it be known then that he was interested in utilizing the premises not only as his residence but as a site for his office and it was agreed that an inquiry should be made of the building inspector regarding the legitimacy of such a use. Plaintiff was represented by counsel at the time and also consulted with him on this subject. His attorney likewise advised him to consult with the building inspector.

In mid-March 1984 plaintiff contacted the building inspector by phone. After indicating that he was considering purchasing a home on Mansfield Avenue, he asked whether it was permissible to operate a professional office there and also whether alterations could be made to establish a waiting room. Sullivan responded in the affirmative and indicated that although the

premises were located in a residential zone, the code permitted professional offices for use by the occupant. No plans or other data were submitted to Sullivan at that point and there were no discussions regarding any other requirements such as off-street parking. Sharp had a similar conversation with Sullivan shortly thereafter at which time he also asked whether the property could be used for professional offices. He received a similar response and was also given a copy of a portion of the zoning code regarding uses permitted in particular zones. Negotiations between plaintiff and Sharp then continued and on March 24, 1984 a contract of sale was executed. The contract called for a total purchase price of $263,827 with closing scheduled for June 15, 1984. Seller guaranteed that there were no restrictions which would prohibit the use of the property as a single-family dwelling including a portion of the property for use as an office for the buyer's practice of psychiatry. Seller then undertook to complete the several renovations required by the contract and agreed to deliver a certificate of occupancy at closing.

Sharp returned to the building inspector in April 1984 and sought an amended building permit. Although a floor plan which he had prepared was presented which showed the creation of certain new walls and a doorway connecting an existing garage to the main structure, no mention was made that he no longer intended to use the premises for his own use; nor was any mention made of the agreement with plaintiff or his intention to renovate the premises for use as a doctor's office. The amended certificate was thus issued and the work commenced.

In June 1984 closing was completed and title was transferred. No certificate of occupancy was obtained and thus none was presented. Sharp had previously called for an inspection and obtained an electrical approval but was told that no certificate of occupancy was necessary. Sharp related this information to plaintiff and he withdrew his requirement for the certificate of occupancy. Plaintiff had no attorney present at the time.

Plaintiff subsequently moved into the premises and quickly opened his office. Responding to certain complaints from neighbors Sullivan then inspected the premises for the first time. Upon discovering that it was being used as a doctor's office, he gave notice to plaintiff to close the office as it was in violation of chapter 100–10A(7) of the zoning code. When Winn refused, a summons was issued on August 24, 1984. This action followed.

The Margate Zoning Code requires, among other things, four off-street parking spaces for professional offices located in a residential zone. The amendment which incorporated that requirement was passed in September 1983 and became effective in January 1984. Before that, only one space was required. Although the subject premises contains an off-street driveway, it is not of sufficient size to comply with the code requirements, both because of inadequate width as well as an inability to permit the free ingress and egress of cars without "stacking." It should also be noted that because of the heavy congestion of traffic in the beach-block area during the summer months no off-street parking is permitted on this and other streets in the area.

## LEGAL CONCLUSIONS

As previously indicated there are two primary legal issues which must be resolved. One involves the question of whether the city is estopped from enforcing the code because of the actions of the building inspector; the second requires a determination of whether the zoning board abused its discretion in denying the variance application. The estoppel issue will be treated first.

As a general matter, estoppel is an equitable concept which holds that one, because of his conduct, may be precluded from taking a course of action that would work an injustice and wrong to a second party who, with good reason and in good faith, has relied upon that conduct. *Summer Cottagers' Ass'n*

*of Cape May v. The City of Cape May,* 19 *N.J.* 493, 504 (1955). Although this doctrine has been applied to municipalities as well as individuals, it is not applied with the same freedom when a municipality is involved since the public interest is affected. *Ibid.* There have nevertheless been several cases in which this doctrine has been applied against municipalities where building permits were issued erroneously. In each case, the permit was issued in good faith and there was substantial and reasonable reliance on that action. See, for example, *Hill v. Board of Adjustment, Borough of Eatontown,* 122 *N.J.Super.* 156 (App.Div.1972); *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89 (Law Div.1956), aff'd 24 *N.J.* 326 (1957); and *Howland v. Freehold,* 143 *N.J.Super.* 484 (App.Div.1976). As the cases make clear, whether or not estoppel will be applied depends first on whether the action involved is found to have been *ultra vires.* Stated differently, certain actions by municipal officials, although erroneous, are said to be beyond the statutory power of the official and are thus "void." Such acts, even when undertaken in good faith, are beyond the relief afforded by estoppel. On the other hand, where the erroneous action is taken, not only in good faith but also within the ambit of the official's duty, it is not deemed "void" and thus estoppel is applicable. Such reliance, however, must be reasonable and in good faith. *Hill v. Board of Adjustment, supra,* 122 *N.J.Super.* at 152. An additional element was added in *Howland* where it was held that there must also be "the appearance of some reasonable basis for the issuance of the permit." *Howland v. Freehold, supra,* 143 *N.J.Super.* at 490.

Although there is no question that the building inspector acted within the ambit of his authority here, contrary to plaintiff's argument, this is not really a "wrongful permit" case. No permit was ever issued which would have authorized the use of these premises for a doctor's office. The renovations which were authorized were not designated for that purpose. Not only did Sharp fail to indicate that the work was intended to accommodate a doctor's office, he affirmatively represented

that the changes were for his personal use. Indeed, if estoppel is to apply at all in this setting, it would seem that it should be applied to preclude the plaintiff from relying on a permit which was issued under false pretenses. See *Freeman v. Hague*, 106 *N.J.L.* 137 (E. & A.1929) where the court held that deceit or misrepresentation by the applicant could defeat a previously issued building permit even in face of a change of position in reliance thereon. That is not to say that either the plaintiff or Sharp acted with the intent to deceive. Plaintiff was probably not even aware of the circumstances under which Sharp obtained the amended permit. As for Sharp, he presumably concluded that because of the juxtaposition of the two conversations regarding the ability to use the premises as an office and the presentation of the amended application, the building inspector was aware of what was intended. Indeed, this assumption was part of the underpinning for this court's granting of the preliminary injunction. In reviewing the matter now, however, it is my view that Sharp did not act reasonably in relying upon such assumptions and thus whatever reliance he placed on the issuance of the amended permit was incorrect. Since plaintiff's rights with respect to that permit can rise no higher than Sharp's, his reliance must similarly fail.

Leaving aside the issuance of the permit, however, the question still remains as to whether plaintiff acted reasonably in relying on the opinion he was given by the building inspector. It appears to be an open question in New Jersey as to whether verbal opinions such as this can reasonably be relied on to preclude the enforcement of code provisions. No case appears to have gone that far. See *Howland v. Freehold* and cases cited *supra;* see also Annotation, "Rights Under Illegal Building Permit," 6 *A.L.R.*2d 960 (1949). More generally, one may question when verbal expressions by public officials which turn out to be erroneous may be relied on, if at all, to preclude properly authorized "official action" to the contrary. What little guidance exists by way of case law, both in and out of state, points in the opposite direction. *See, e.g., Summer*

*Cottagers' Ass'n. of Cape May v. The City of Cape May,*
*supra; Capano v. Borough of Stone Harbor,* 530 *F.Supp.*
1254 (D.N.J.1982); *Corning v. Town of Ontario,* 204 *Misc.* 38,
121 *N.Y.S.*2d 288 (Sup.Ct.1952); *City of Hagerstown v. Long*
*Meadow Shopping Center,* 264 *Md.* 481, 287 *A.*2d 242 (Ct.App.
1972).

It is also important to note that prior to more modern case
law such as *Summer Cottagers' Ass'n of Cape May, Jan-*
*tausch* and those that followed, the prevailing view did not
support the application of estoppel against municipalities even
in face of erroneously issued permits relied on in good faith.
*See e.g.,* Annotation 6 *A.L.R.*2d, *supra* at 965. The prevailing
view then was that the applicant was presumed to know the law
and if a permit was issued in contravention of law, no reason-
able reliance could be placed thereon. *Giordano v. Dumont,*
137 *N.J.L.* 740 (E. & A.1948); *Ostrowsky v. Newark,* 102
*N.J.Eq.* (1 Backes) 169, 172 (Ch. 1928). Given this background
and the carefully restricted scope of the exceptions to the
"general rule" which the more modern cases represent, a
further and more general expansion of the estoppel concept in
this area seems unlikely. There are strong policy reasons
which support resistance to such expansion. As frequently
noted, when a municipality is involved, as opposed to an individ-
ual, it is the public interest which suffers when estoppel is
applied. *Hill, supra,* 122 *N.J.Super.* at 166 (Fritz, J.A.D.,
concurring). Generalities aside, however, there are very prac-
tical reasons why municipalities should stand on different foot-
ing than individuals. For example, judicial notice may be taken
of the fact that public officials, including building inspectors,
are inundated with a myriad of questions regarding a host of
potentially complex questions involving zoning codes, construc-
tion codes and the many statutory regulations that impact on
all aspects of local activity. Many of those inquiries are quite
casual and are based on extremely limited information, as was
the case here. If those officials were to be bound to their
detriment by casual reactions to informal inquiries, given hu-

man frailty, the public interest in maintaining the integrity of
our laws would be in serious jeopardy. Obviously public offi-
cials make mistakes from time to time, sometimes based on an
erroneous interpretation of a code provision, sometimes based
on the lack of sufficient information from which to make a
judgment.

That is not to say that members of the public should never be
able to rely on opinions by or actions taken by public officials.
The difficulty, as usual, is one of definition. It may be that the
key ingredient is that the action relied on must be "official,"
that is, a more formal event. It may be that the action relied
on must be in writing. In those cases involving erroneously
issued building permits where estoppel *was* applied, both of
these elements were present, as were others such as "good
faith," reasonable reliance, *etc. Howland v. Freehold, supra.*
The difficult search for an appropriate formula was under-
scored by our Supreme Court in *Tremarco Corp. v. Garzio,* 32
*N.J.* 448 (1960).

> There is no easy formula to resolve issues of this kind. The ultimate objective
> is fairness to both the public and the individual property owner. We think
> there is no profit in attempting to fix some precise concept of the nature and
> quantum of reliance which will suffice. Rather a balance must be struck
> between the interests of the permittee and the right and duty of the municipali-
> ty through planning and implementation of that scheme through zoning....
> [*Id.* at 457.]

For present purposes, however, it is not necessary that this
court further define the parameters of this concept. I am
satisfied that in this case plaintiff was not acting reasonably
when he proceeded with his purchase based only on the infor-
mation supplied by the building inspector. The information
supplied was merely that the property was located in the zone
which permitted professional offices to be used by the own-
er/occupant and that the building, if revised, would not exceed
the lot coverage limitations. There is no question that the
building inspector was correct in relating that opinion. He was
never shown a survey or plan of the premises which indicated
any other details regarding the property. Nor was he ever

made aware, for example, of what the off-site parking availability was, if any. The question thus becomes whether it is the obligation of the building inspector, when asked such a general question, to recite all of the conceivable code provisions that might impact upon the utilization of a property for a particular purpose, failing which, such provisions may not be enforced. It is the judgment of this court that that question should be answered in the negative.

The conversation with Sharp at which time he was given a copy of the code provision dealing with permitted uses should be viewed in the same light. What the building inspector supplied was a schedule of district regulations which included these regulations which covered uses in the residential zone in question, R–60. Although it is easy to see how a layman might misread that schedule insofar as it relates to parking requirements, the fact is that a careful inspection alerts the reader to the amended provision dealing with that subject. Moreover, the fact that a layman could be misled is not the test for enforceability regarding code provisions. *See Ostrowsky, supra*, 102 *N.J.Eq.* at 172. The building inspector did nothing to encourage their misreading. Thus this court need not deal with the consequences of a situation where the building inspector made affirmative representations regarding the very issue in dispute.

It is also important to point out that this is not a situation where a site plan was given to the inspector from which he was requested to give written approval. Indeed, what was submitted for approval, Sharp's amended application, would have tended to divert Sullivan from discovering and correcting the wrongful impression that both Sharp and Winn had gotten. See *Freeman v. Hague, supra;* Annotation, 6 *A.L.R.*2d *supra* at 975. Had any one of several other steps been taken which would have been reasonable under the circumstances, the difficulty would most probably never have occurred. For example, had plaintiff sought the interpretation of his own attorney on the subject, a careful reading of the code provision would have

led to the amendment regarding parking. Had Sharp correctly represented the nature of the work that he was doing and the fact that the use of the property was changing, the application would have been denied because of Sharp's lack of a license. *See N.J.A.C.* 5:25–2.5(p). At the very least, notice regarding the change in use would have precipitated a formal inspection and a withholding of the certificate of occupancy based on noncompliance. Had complete plans been submitted to the building inspector prior to closing they would have outlined what was intended. Had the plans shown the entire site including the off-site parking, the likelihood is that the building inspector would have seen the defect and alerted Sharp and, through him, plaintiff. None of these steps were taken.

In sum, despite this court's preliminary impressions on the subject, further review and analysis convinces me that neither Sharp nor Winn acted reasonably in proceeding with the sale based on the actions of the building inspector. In this reassessment careful attention has been given to not only the concept of estoppel and its equitable underpinnings, but in particular, to the peculiar facts of this case. When estoppel is viewed from the narrow perspective of two private individuals, it is a concept which is usually easy to apply. When the issue involves a municipality and therefore the rights of the public generally, the circumstances in which it should be applied should naturally be more narrow. *See Summer Cottagers' Ass'n of Cape May, supra,* 19 *N.J.* at 493. What is fair and just in this setting necessarily includes consideration, not only of plaintiff's rights, but the rights of all the residents of Margate. Before the rights of those people can be removed, the circumstances supporting estoppel should be clear. No such showing has been made here. Plaintiff's application regarding the issue of estoppel will accordingly be denied.

With regard to plaintiff's challenge to the actions of the zoning board, the scope of review by this court is narrow. As the many cases on this subject make clear, the actions of an administrative body such as a zoning board should not be

overturned unless the court is satisfied that the judgment there was arbitrary and capricious. *Kessler v. Bowker*, 174 *N.J.Super.* 478, 486 (App.Div.1979). If on the other hand, there is a reasonable basis in the record and under the law for the findings made, then even where the court might have reached a different judgment, the action below must be sustained. *Kramer v. Sea Girt Bd. of Adjustment*, 45 *N.J.* 268, 285 (1965). The law with respect to a bulk variance, such as this one, is controlled by *N.J.S.A.* 40:55D–70. Under that section a variance may be issued where the enforcement of the zoning code would result in peculiar and exceptional practical difficulties, or "undue hardship" on the developer of the property. Such variances, however, should only be granted where there is some special circumstances regarding the particular piece of property such that a deviation from the zoning requirements and the benefits to be derived by that deviation would substantially outweigh any detriment. Even then, however, the variance should be granted only where to do so would advance the purposes of the Land Use Act and not have a negative impact upon the community. *Commons v. Westwood Zoning Bd. of Adjustment*, 81 *N.J.* 597, 606–607 (1980). In the more classic language of the statute, such relief may not be granted unless it can be done without substantial detriment to the public good and without substantially impairing the intent and purposes of the zoning plan or zoning ordinance. *N.J.S.A.* 40:55D–70.

In this case the board unanimously concluded that to permit a professional office in a residential zone, without adequate off-street parking, would create significant congestion as well as a safety hazard and would thus have a detrimental effect on the community in general and on the neighborhood in particular. The testimony from the residents and from the city planner provided a reasonable basis for that conclusion. The hardship, to the extent that it exists, was self-imposed. In sum, it is the conclusion of this court that there was a reasonable basis in the record below to support the conclusions reached by

the zoning board.  Given both legal and factual support for its conclusions, the action of the board should be affirmed.

## CONCLUSION

For all the reasons stated above, it is the judgment of this court that plaintiff's action seeking to estop the city from enforcing its zoning code should be denied.  The effort to overturn the action of the board of adjustment should be similarly denied.  Given this conclusion the restraints preliminarily issued should be removed.  On the other hand, it is clear that the impact on plaintiff will be significant and that defendant has contributed to this dilemma to some degree.  Given all of the circumstances some reasonable period should be allowed to permit plaintiff to achieve an orderly transition of the existing use.  Accordingly, although the restraints previously issued will be removed, the effective date of this provision will be delayed for a period of 60 days from the date of the judgment to be entered.  Counsel for the City of Margate should submit an order consistent with the above.