866 A.2d 988

MAUREEN A. GRASSO AND R.G. GRASSO, JR., INC., A NEW JER-
SEY CORPORATION, PLAINTIFFS–APPELLANTS, v. THE
BOROUGH OF SPRING LAKE HEIGHTS, THE PLANNING
BOARD OF THE BOROUGH OF SPRING LAKE HEIGHTS, THE
BOARD OF ADJUSTMENT OF THE BOROUGH OF SPRING
LAKE HEIGHTS, ALBERT P. RATZ, CONSTRUCTION OFFI-
CIAL AND ROBERT WENZEL, ZONING OFFICER, DEFEN-
DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 28, 2004—Decided November 24, 2004.

42

Before Judges LEFELT, ALLEY and FALCONE.

*Lomurro, Davison, Eastman & Munoz,* attorneys for appellants (*Robert F. Munoz,* of counsel and on the brief).

*Starkey, Kelly, Blaney, Bauer & White,* attorneys for respondents (*Scott W. Kenneally,* on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

Plaintiffs Maureen Grasso and R.G. Grasso, Jr., Inc. appeal from two judgments: (1) upholding Spring Lake Heights Borough's denial of plaintiffs' application for a height variance, and (2) declining to estop the Borough from enforcing its zoning ordinance. We affirm the estoppel judgment, but because we articulate, for the first time, the standard to be applied in reviewing an application for a height variance under *N.J.S.A.* 40:55D–70(d)(6), we vacate the variance denial and remand to the Board of Adjustment for reconsideration of plaintiffs' application.

The pertinent facts are relatively simple. The property in question is a residentially zoned three-lot subdivision located along a ridge on the Borough's border with Wall Township. The lots, particularly the corner lot, slope steeply upward approximately ten feet from the front to the rear of the property. The ridge is the highest part of the Borough, with the Township's terrain, for the most part, being flat.

Rudolph Grasso, husband of plaintiff Maureen Grasso and the manager of plaintiff R.G. Grasso, Jr., Inc., is a "spot" builder who constructs "spec" homes for sale. Grasso secured a zoning and construction permit to build, on the corner lot of the three-lot subdivision in question, a two-story colonial style house that was represented to the zoning and construction officials as being slightly less than thirty feet high. Unfortunately, however, plaintiffs measured the height of the structure from grade along the foundation and the Borough's zoning ordinance requires building height to be measured from the curb line.

Several neighbors complained that the house was too high, and the Borough issued a stop-work order. By the time the stop-order was issued, plaintiffs had improved the curbs, streets and sewer lines, dug the foundation, installed the footings, and framed, sheathed, and roofed the house at a cost of approximately $12,000 for the improvements and $51,000 or $52,000 for the house. It was undisputed that the partially constructed home was thirty-eight feet above curb line, although twenty nine and one-half feet above grade.

Plaintiffs sought a height variance for the "spec" house under construction and for two homes they intended to build for their daughters, at a later date, on the other two subdivided lots. After conducting a hearing, the Board of Adjustment denied the variance.

Plaintiffs then filed a verified complaint in lieu of prerogative writs, alleging that the Borough was estopped from enforcing the zoning ordinance's height requirements and challenging the Board's denial of the height variance, both because the Board's

findings were inadequate and the decision was arbitrary and capricious.

Judge Ronald L. Reisner ruled that issuance of a construction permit did not estop the Borough from enforcing the height restriction because plaintiffs had misrepresented, however innocently, the height of the house as being under thirty feet. Accordingly, the judge voided the zoning and construction permits under which plaintiffs were building the house.

After first correctly remanding for additional findings, *Harrington Glen, Inc. v. Mun. Bd. of Adjustment of Borough of Leonia*, 52 *N.J.* 22, 28, 243 *A.*2d 233, 236–37 (1968), another judge affirmed the Board's variance denial and held that the standards to evaluate an application for a height variance were the same as for a use or (d)(1) variance. Plaintiffs timely appealed to this court, advancing three arguments, which we address in turn.

## I.

Plaintiffs first argue that, upon the remand, individual comments by Board members lacked support in the record or were legally irrelevant. This argument is beside the point because it is the resolution that controls, not the observations of individual board members. *Scully–Bozarth Post # 1817 of Veterans of Foreign Wars of U.S. v. Planning Bd. of City of Burlington*, 362 *N.J.Super.* 296, 311–13, 827 *A.*2d 1129, 1137–39 (App. Div.), *certif. denied*, 178 *N.J.* 34, 834 *A.*2d 407 (2003); William M. Cox, *New Jersey Zoning and Land Use Administration*, § 28–5.1 (Gann 2004). The resolution is the official act of the Board. *Scully–Bozarth Post, supra*, 362 *N.J.Super.* at 311–13, 827 *A.*2d at 1137–39. Because plaintiffs concede the resolution was "articulate and substantially on point," plaintiffs' first argument lacks merit.

## II.

Second, plaintiffs argue that the zoning officer and the construction official were independently obligated to review care-

fully plaintiffs' plans to ensure that the proposed structure did not violate the height restrictions. Because this obligation was defectively performed, according to plaintiffs, the Borough should be estopped from compelling them to remove the partially completed house.

Judge Reisner rejected this argument and held that (1) plaintiffs could not establish good faith reliance upon the permits because they were responsible for supplying the Borough with misleading information and (2) the height restrictions contained in the zoning ordinance were clear and not subject to interpretation. As Judge Reisner explained, plaintiffs' surveyor and professional planner had the duty "to discern what precisely was proposed to be built for the subdivision and to set forth in the zoning schedule in the subdivision plat for the planning board all variances that were needed for the three houses." *See Winn v. City of Margate,* 204 *N.J.Super.* 114, 120–21, 497 *A.2d* 928, 931–32 (Law Div.1985).

Plaintiffs' failure to disclose the height of the structure as measured from the curb line, because they failed to read the ordinance, precludes a finding of good faith reliance upon the zoning and building permits, which were issued in reliance upon the erroneous information plaintiffs had submitted, and in violation of the unambiguous height restriction contained in the zoning ordinance. *Irvin v. Township of Neptune,* 305 *N.J.Super.* 652, 657, 702 *A.2d* 1388, 1391 (App.Div.1997), *certif. dismissed,* 157 *N.J.* 539, 724 *A.2d* 799 (1998). Without plaintiffs' good faith reliance on defendant's approvals, the doctrine of equitable estoppel will not be employed. *Bonaventure Int'l, Inc. v. Borough of Spring Lake,* 350 *N.J.Super.* 420, 436, 795 *A.2d* 895, 904 (App.Div.2002).

In any event, the equitable estoppel doctrine is rarely invoked against a municipality because it could impair essential governmental functions. *Ibid.* However, a municipality may be estopped from enforcing its zoning ordinance if a landowner makes substantial expenditures in good faith reliance on a permit that was issued because of a municipal official's erroneous, but at least debatable, interpretation of the zoning ordinance. *Irvin,*

*supra,* 305 *N.J.Super.* at 657, 702 *A.*2d at 1391. That is not the case here, where neither party claims ambiguity in the ordinance requiring building height to be measured from the curb.

■ Furthermore, we have "consistently held that municipal action in the land use control field taken in direct violation of law or without legal authority is void ab initio and has no legal efficacy." *Hilton Acres v. Klein,* 35 *N.J.* 570, 581, 174 *A.*2d 465, 470 (1961). A "building permit issued contrary to a zoning ordinance or building code cannot ground any rights in the applicant." *Ibid.* We affirm the estoppel judgment for the reasons stated by Judge Reisner, in his published opinion at 375 *N.J.Super.* 187, 866 *A.*2d 1076 (Law Div.2004), as supplemented herein.

### III.

■ Finally, plaintiffs contend that the trial judge should not have directed the Board on remand to evaluate the merits of the height variance based on "the positive and negative criteria [of the use variance] as enunciated under *N.J.S.A.* 40:55D–70(d)." We agree with plaintiffs.

Plaintiffs' variance application is governed by *N.J.S.A.* 40:55D–70(d)(6), which, on a showing of special reasons, the so-called positive requirement, authorizes a variance to permit the height of a principal structure to exceed "by 10 feet or 10% the maximum height permitted in the district for a principal structure." [1] In addition, as in all (c) and (d) variances, the applicant must prove that the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the

---

[1] The thirty-eight foot high house in this case exceeds the municipal maximum by eight feet. Thus, the application must be reviewed under (d)(6) because the house's height is over 10% of the thirty foot maximum, even though the house is less than ten feet over the maximum. *See* Cox, *supra,* § 6–3.4(f) and § 7–7.3, discussing that if the structure's height were less than ten feet or 10% of the maximum, the application would be judged as a bulk variance under(c).

purpose of the zone plan and zoning ordinance," the so-called negative requirement. *N.J.S.A.* 40:55D–70(d).

■ The standard for establishing special reasons depends on the type of (d) variance at issue. *Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Township,* 172 *N.J.* 75, 83, 796 *A.*2d 247, 252 (2002). For example, it has long been established that certain educational, charitable, or institutional uses are deemed inherently beneficial, and therefore automatically meet the positive criteria. *Sica v. Bd. of Adjustment of Township of Wall,* 127 *N.J.* 152, 159–60, 603 *A.*2d 30, 34 (1992). A variance for a new commercial facility prohibited by the zoning ordinance, which does not inherently promote the general welfare, demands a showing that the site is particularly suited for the proposed use. *Medici v. BPR Co.,* 107 *N.J.* 1, 18, 526 *A.*2d 109, 118 (1987). However, when seeking a minor expansion of a pre-existing non-conforming use, a lesser showing of special reasons will suffice for a (d)(2) variance. *Burbridge v. Governing Body of Township of Mine Hill,* 117 *N.J.* 376, 393, 568 *A.*2d 527, 536–37 (1990). For example, a board could rely on aesthetic considerations alone to grant a (d)(2) variance for a minor expansion of a nonconforming use, even though such considerations would rarely justify a variance for a new nonconforming use. *Id.* at 392, 568 *A.*2d at 536.

■ When dealing with (d)(3) variances, permitting deviation from standards pertaining solely to a conditional use, the special reasons must be "relevant to the nature of the deviation from the ordinance." *Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment,* 138 *N.J.* 285, 297–98, 650 *A.*2d 340, 346 (1994). Thus, the applicant must show that the proposed deviation is not substantial by establishing "that the site proposed for the conditional use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by the ordinance...." *Id.* at 298, 650 *A.*2d at 346–47. In other words, a board could find a special reason "if it is persuaded that the non-

compliance with conditions does not affect the suitability of the site for the conditional use." *Id.* at 298–99, 650 *A.2d* at 347.

In *Randolph Town Ctr. Assocs., L.P. v. Township of Randolph,* 324 *N.J.Super.* 412, 416, 735 *A.2d* 1166, 1168 (App.Div.1999), as another example of tailored special reasons, we held that the standards governing floor area ratio (FAR) variances, *N.J.S.A.* 40:55D–70(d)(4), were not those applicable to (d)(1) use variances. Relying on *Coventry Square, supra,* we held that the peculiar suitability test for a (d)(1) commercial use was not applicable. *Id.* at 416, 735 *A.2d* at 1168. "To impose such a stringent burden would mean that a FAR variance applicant would have perhaps as difficult a burden to meet as an applicant for a prohibited use variance." *Id.* at 416–17, 735 *A.2d* at 1168. Rather, like an applicant for a conditional use variance, a developer seeking a FAR variance "must show that the site will accommodate the problems associated with a proposed use with larger floor area than permitted by the ordinance." *Id.* at 417, 735 *A.2d* at 1168. That in turn requires an analysis of the purpose of FAR requirements, and the land use problems that could be caused if the variance were granted. *Id.* at 417–18, 735 *A.2d* at 1169.

Prior to 1991, height variances were treated as bulk variances, reviewable under *N.J.S.A.* 40:55D–70(c), which required a showing that because of "exceptional narrowness, shallowness or shape of the [property]" a strict application of the regulations would cause practical difficulties or "undue hardship." *Commercial Realty and Res. Corp. v. First Atl. Props. Co.,* 122 *N.J.* 546, 558–59, 585 *A.2d* 928, 935 (1991). In 1991, the Legislature placed height variances within *N.J.S.A.* 40:55D–70(d). *L.* 1991, *c.* 256, § 21.

The hardship that must be shown to justify a (c)(1) variance is less than that needed to justify a (d) variance for a special reason. *Lang v. Zoning Bd. of Adjustment of Borough of N. Caldwell,* 160 *N.J.* 41, 52–56, 733 *A.2d* 464, 470–73 (1999). In a (c)(1) case "the focus of the board's inquiry should be on whether the unique property condition relied on by the applicant consti-

tutes the primary reason why the proposed structure does not conform to the ordinance." *Id.* at 56, 733 *A*.2d at 473.

In a (d)(1) case, the applicant for a hardship variance must show that the property has been zoned into inutility, or, at the very least, that it is not reasonably adaptable to a conforming use. *Stop & Shop Supermarket Co. v. Bd. of Adjustment of Township of Springfield*, 162 *N.J.* 418, 431, 744 *A*.2d 1169, 1176 (2000). The Municipal Land Use Law distinguishes (c) and (d) variances because the Legislature believed that the latter had a greater potential for disrupting a municipality's zone plan. *Commercial Realty, supra*, 122 *N.J.* at 562, 585 *A*.2d at 936. In *Engleside at W. Condo. Ass'n v. Land Use Bd. Of Borough of Beach Haven*, 301 *N.J.Super.* 628, 639, 694 *A*.2d 328, 334 (Law Div.1997), the court stated that in adopting subsection (d)(6), "the Legislature reasoned that when a height deviation reached that level of nonconformity [exceeding the maximum height by 10 feet or 10%], the resulting structure arguably could be seen as something out of character with the structures permitted in the zone and thus should be reviewed under the enhanced standards of subsection d."

In keeping with the Legislative intent, applicants for (d)(6) variances based on hardship must show that the property for which the variance is sought cannot reasonably accommodate a structure that conforms to, or only slightly exceeds, the height permitted by the ordinance. Stated differently, the applicant for a (d)(6) variance on grounds of hardship must show that the height restriction in effect prohibits utilization of the property for a conforming structure.

It is relatively clear that plaintiffs failed to demonstrate hardship as a special reason. The record shows that the property could accommodate a single-story ranch or bi-level home, or perhaps even a Cape Cod style two-story dwelling. Alternatively, if permitted by the Borough's ordinances relating to soil removal, plaintiffs could remove a portion of the knoll in order to construct a two-story colonial style house that was less than thirty feet high.

■ Plaintiffs' argument that there is a limited market for ranch-style or Cape Cod homes is beside the point. A developer's inability to make the most profitable use of the property is not sufficient to show hardship in a (d) variance case. *Cerdel Constr. Co., Inc. v. Township Comm. of Township of E. Hanover,* 86 *N.J.* 303, 307, 430 *A.*2d 925, 927–28 (1981).

■ However, holding that plaintiffs failed to establish the level of hardship necessary to justify a (d) variance does not end the inquiry. We believe that the special reasons necessary to establish a height variance must be tailored to the purpose for imposing height restrictions in the zoning ordinance. *See Coventry Square, supra,* 138 *N.J.* at 298, 650 *A.*2d at 346 (standards for conditional use variances must be "appropriate for the purposes and characteristics of conditional uses"); *Randolph Town Ctr., supra,* 324 *N.J.Super.* at 416–17, 735 *A.*2d at 1168 (the criteria for evaluating a FAR variance application must be relevant to the purposes of FAR restrictions). *See also N. Bergen Action Group v. N. Bergen Township Planning Bd.,* 122 *N.J.* 567, 578, 585 *A.*2d 939, 944 (1991) ("[I]t is fundamental that resolutions granting variances undertake to reconcile the deviation authorized by the Board with the municipality's objectives in establishing the restriction.").

Municipal restrictions on building height date back to the late 1800s, and were imposed in response to advancing technology and construction techniques that enabled the construction of tall buildings. 3 Norman Williams and John M. Taylor, *American Land Planning Law,* § 69:1 (rev. ed. 2003). Very early on, courts recognized the relationship between height restrictions and the public welfare because the height of a building could impact traffic congestion, fire hazards, public health, adequate light and air, and population density. *E.g., Pritz v. Messer,* 112 *Ohio St.* 628, 149 *N.E.* 30, 31 (1925), *overruled on other grounds, Vill. of Hudson v. Albrecht, Inc.,* 9 *Ohio St.*3d 69, 458 *N.E.*2d 852, 855–56, *appeal dismissed,* 467 *U.S.* 1237, 104 *S.Ct.* 3503, 82 *L.Ed.*2d 814 (1984).

Height restrictions like restrictions on density, bulk or building size, can also be a technique for limiting the intensity of the property's use. *N. Bergen Action Group, supra,* 122 *N.J.* at 567, 585 *A.*2d at 939; *see N.J.S.A.* 40:55D–65(b) (zoning ordinance may regulate bulk, height, building size, lot coverage, lot size, floor area ratios and "other ratios and regulatory techniques governing the intensity of land use and the provision of adequate light and air").

In this case, the primary purpose of a thirty foot height limit ostensibly is to provide adequate light, air, and open space, and to promote a desirable visual environment, both legitimate purposes of land use regulation. *N.J.S.A.* 40:55D–2(c) and (i). It has been recognized, albeit in the context of much taller structures like cellular towers or monopoles, that an excessively tall structure can aesthetically impair a municipality. *See Cell S., supra,* 172 *N.J.* at 85–86, 796 *A.*2d at 253–54. *Compare Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment,* 152 *N.J.* 309, 331, 704 *A.*2d 1271, 1282 (1998) (because of their height, radio transmission towers and monopoles can be a "cause of concern"), *with Ocean County Cellular Tel. Co. v. Township of Lakewood Bd. of Adjustment,* 352 *N.J.Super.* 514, 533–34, 800 *A.*2d 891, 902–03 (App.Div.) (locating antennae on an existing water tower would be aesthetically inconsequential), *certif. denied,* 175 *N.J.* 75, 812 *A.*2d 1108 (2002).

The ordinance from which plaintiffs seek a variance keeps residential structures relatively low, in all likelihood to preserve views of the skyline and trees, and to avoid the appearance of overcrowding that could result from a tall house on a small lot. As is the case with (d)(3) and (d)(4) variances, plaintiffs could prove special reasons for a height variance if they could persuade the Board that a taller structure than permitted by ordinance would nonetheless be consistent with the surrounding neighborhood. To establish special reasons, plaintiffs would need to demonstrate that the thirty-eight foot high structure would not offend any of the purposes of the thirty foot height limitation. *See*

*Coventry Square, supra,* 138 *N.J.* at 298–99, 650 *A.2d* at 346–47 (permitting a showing that noncompliance with the condition set forth in the ordinance does not affect the suitability of the site for the proposed use); *Randolph Town Ctr., supra,* 324 *N.J.Super.* at 417, 735 *A.2d* at 1168–69 (permitting a showing that the site will accommodate problems associated with a greater floor area ratio than permitted).

Plaintiffs would have to convince the Board that a thirty-eight foot high house would not be out of place in the neighborhood or degrade the appearance of the neighborhood by blocking views of trees or skyline, or by reason of its proximity to the street or excessive height, give the appearance of being out of character with other homes located on the ridge. Also relevant here would be proofs that a less tall, different style house, such as a Cape Cod or a ranch, would have a more detrimental effect on the neighborhood than a two-story colonial.

The Board could find that the benefit of a harmonious, consistent style of house outweighs any aesthetic detriment arising out of the excessive height of the structure. *See N.J.S.A.* 40:55D–2(i) (promoting a desirable visual environment). *Cf. Kaufmann v. Planning Bd. for Township of Warren,* 110 *N.J.* 551, 565, 542 *A.2d* 457, 464 (1988) (zoning benefits arising from more harmonious lot sizes in a neighborhood can justify a (c)(2) variance for insufficient frontage and side yard setback). It is also possible that a variance would obviate the need for substantial excavation of the site, thereby conserving natural resources and preventing degradation of the environment. *N.J.S.A.* 40:55D–2(j). Finally, conserving property values in the neighborhood remains a purpose of land use regulation, even though that goal is not expressly stated in *N.J.S.A.* 40:55D–2. *Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 144–45, 405 *A.2d* 381, 390–91 (1979); Cox, *supra,* § 7–4.1. On proper proofs, the Board could find that a two-story colonial style house would preserve neighborhood property values better than a ranch or Cape Cod.

Here, plaintiffs did present some evidence that there were several other homes in the neighborhood that exceeded the Borough's height restrictions due to the unusual elevation of the ridge in this particular neighborhood. There was also testimony that the structure would not block the light, air, or view of any surrounding properties. In addition, there was testimony that two-story colonial style homes predominated in the immediate area, and that a ranch, Cape Cod, or other style home would be out of character.

Considering the testimony presented and especially because the standard for a height restriction variance has never before been articulated, we remand the matter to the Board to allow plaintiffs to supplement the record to address the relevant factors, and to permit the Board to adopt new findings and conclusions pertinent to the proper criteria for a height variance. *See Medici, supra,* 107 *N.J.* at 26, 526 *A.*2d at 122 (remanding for supplemental evidence and findings). By this action, we intend to signal no preference for any particular result upon the remand.

Because neither the Board nor the Law Division focused in any depth on the negative criteria for height variances, reviewable under subsection (d)(6), we take no position on this issue. *See N. Bergen Action Group, supra,* 122 *N.J.* at 578, 585 *A.*2d at 944. Instead, we leave the issue for further development by the Board and, if necessary, the trial court.

The variance denial is set aside and the matter is remanded for further proceedings consistent with this decision. We do not retain jurisdiction.