**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1115-19T2

THE VILLAGE
NEIGHBORHOOD
ASSOCIATION,

     Plaintiff-Appellant,

v.

THE ZONING BOARD OF
ADJUSTMENT OF THE CITY
OF JERSEY CITY, and EP
BRUNSWICK JC GROUP, LLC,

     Defendants-Respondents.

_____

Submitted October 6, 2020 – Decided October 28, 2020

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0384-19.

Cynthia A. Hadjiyannis, attorney for appellant.

Vincent J. La Paglia, attorney for respondent Zoning Board of Adjustment of the City of Jersey City.

Prime & Tuvel, LLC, attorneys for respondent EP Brunswick JC Group, LLC (Jason R. Tuvel and Sara R. Werner, on the brief).

PER CURIAM

Plaintiff The Village Neighborhood Association, appeals from an October 4, 2019 Law Division order affirming a resolution of defendant Zoning Board of Adjustment of the City of Jersey City (Board) that granted defendant Brunswick JC Group LLC's (Brunswick) application for variance relief and site plan approval. We affirm.

## I.

Brunswick owns an irregularly shaped .314-acre lot in Jersey City with frontage on Third and Brunswick streets in the recently created R-5 Low-Rise Residential Mixed-Use zone (R-5 zone). The structures on the property included an abandoned funeral home, private garage, and eight dwelling units. Brunswick applied to the Board to demolish the existing buildings and construct a mixed-use structure consisting of five stories with commercial space on the ground floor and thirty residential units. The fifth story would be setback to reduce its view from street level. The development also included an interior parking garage.

The R-5 zone permitted four-story structures with a density of eighty units per acre. As Brunswick sought to build a five-story structure with a density of living units greater than that permitted by the zoning ordinance, it sought preliminary and final site-plan approval and attendant use and bulk variances in accordance with N.J.S.A. 40:55D-70(d)(5)-(6) and N.J.S.A. 40:55D-70(c).

Specifically, Brunswick applied for use variance to allow for thirty units where twenty-six were permitted. It also sought a use variance to allow construction of an approximate 52-foot, five-story building where the R-5 zone permitted only a 42-foot, four-story structure. Brunswick also applied for bulk variances to allow for greater building and lot coverage and to permit parking on a lot less than 40-feet wide.

The Board held a hearing in which it heard expert testimony from Brunswick's architect, traffic engineer, and professional planner and considered related documentary evidence. It heard testimony from the Board's planner, who authored the R-5 zoning ordinance. The Board also considered an inter-office memorandum (Memorandum) prepared by its planner in which she recommended the removal of the proposed fifth floor and concluded in part that "[a]nything higher than [four] stories would be out of character with the surrounding neighborhood . . . ."

The Memorandum also provided details regarding the legislative history of the R-5 zone. Specifically, it noted that the R-5 zone was "codified in 2017 after [two] years of community meetings and zoning analysis on building height, density, and the negative impact of frequent flooding mixed with poor soil conditions." The Memorandum further explained that the four-story height restriction "was the result of a mixture of providing relief for buildings within the flood zone but also to meet the standards within the historic district . . . ."

Plaintiff did not present expert testimony opposing the applications or specifically contesting the conclusions of Brunswick's expert witnesses. Six of plaintiff's representatives attended the hearing and spoke in opposition to Brunswick's application during the public comment period. Another member of the public spoke in support of the off-site parking portion of the application.

The Board granted Brunswick's application and detailed its factual findings and legal conclusions in an eight-page resolution. The Board concluded that Brunswick's application satisfied the positive and negative criteria for the requested variances under N.J.S.A. 40:55D-70 and was consistent with the holdings in Randolph Town Ctr. v. Randolph Twp., 324 N.J. Super. 597 (App. Div. 1989), and Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41, 53 (App. Div. 2004).

As to the positive criteria, the Board reasoned that the proposed development was consistent with the characteristics of the surrounding neighborhood and alleviated neighborhood parking issues. Further, the Board deemed significant that although the project exceeded the permitted density, when completed it would be among the lowest densities in the neighborhood. The Board also noted that the building lot is significantly larger than adjacent lots and the proposed development would remain below the permitted total square footage for the zone.

With respect to the negative criteria, the Board acknowledged that the proposed fifth floor exceeded the permitted height for buildings in the R-5 zone, but concluded it would not have a "substantial detriment to the public good or a substantial impairment to the zone plan or zone ordinance" because the fifth floor would be set back to remove the potential for "shadow impact on neighbors and to keep it hidden from view from the streets." The Board also found that the project provided more than satisfactory parking in relation to its density. Further, the Board determined that the project, "create[d] a more resilient neighborhood for future generations and [by] providing the commercial space on the ground floor, the project satisfi[ed] the intent" of the R-5 zone.

5

The Board conditioned approval, however, on Brunswick: 1) reducing the fifth story by 1000 square feet and adding a "green" roof, with modifications subject to further review and approval; 2) making the second floor open terrace space available as event space for building and neighborhood residents; 3) maintaining the color and material selections as shown on the final plans with no changes to the site design and façade without consultation and approval of the planning staff; and 4) installing all street trees and landscaping in accordance with the applicable municipal ordinance.

On January 28, 2019, plaintiff filed a complaint in lieu of prerogative writ, challenging each of the Board's decisions. Plaintiff maintained that Brunswick failed to provide the requisite proofs to support the requested height, density, bulk, and parking variances, that the Board's decision was arbitrary and capricious, and that the grant of the variance substantially impaired the R-5 zone.

After hearing oral arguments, Judge Vincent J. Militello issued an oral opinion and coincident order in which he concluded that the Board's decision to approve Brunswick's site plan and grant the necessary variances was neither arbitrary nor capricious. Relying on Grubbs v. Slothower, 389 N.J. Super. 377, 389 (App. Div. 2007), Judge Militello rejected plaintiff's argument that the

Board improperly granted the density variance as the project was consistent with the overall goals of the Municipal Land Use Law (MLUL). N.J.S.A. 40:55D-2.

The court relied on the testimony of Brunswick's planner regarding the benefits of the interior parking garage, and specifically that "the increase in off-street parking . . . would lessen the impact on traffic and therefore provide an overall benefit to the area." Judge Militello also noted the testimony of Brunswick's traffic engineer that "the application was designed in a manner that was mindful of the surrounding area and would help accommodate those residents that would normally struggle to find on-street parking." The judge concluded from the testimony that the neighboring community would derive a significant benefit from the project's off-street parking component.

As to plaintiff's challenge to the height variance, Judge Militello found that Brunswick satisfied the standard articulated in Grasso, 375 N.J. Super. at 52. Specifically, the judge concluded that "the application acknowledge[d] [the] purpose [of the R-5 zone] and attempt[ed] to adhere to it." The judge also stated that the "proposed [fifth] story [would] be set back [sixteen] feet from the street" and "would render the [fifth] story a relative non-factor when looking at the building and the skyline . . . ."

Addressing the bulk variances, Judge Militello noted that a "local board is authorized to grant a [bulk] variance when the purpose of the MLUL would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." Judge Militello, as did the Board, again relied on the testimony of Brunswick's planner who opined that the application would advance the purposes of sections (a), (e), and (i) of N.J.S.A. 40:55D-2 "by encouraging an appropriate development of the property, establish[ing] appropriate density, and promot[ing] [a] desirable visual environment."

Finally, Judge Militello found that the Board properly determined that the variance requests satisfied the positive and negative requirements of N.J.S.A. 40:55D-70. The judge stated that "the variances requested have minimal impact on the community . . . or the character of the neighborhood. By implementing a mixed-use development prescribed for the R-5 zone, the application is still in line with the ordinance."

On appeal, plaintiff makes three arguments which primarily challenge the Board's decision to grant a height variance in accordance with N.J.S.A. 40:55D-70(d)(6). First, plaintiff maintains that the Board's decision to permit a fifth floor "offends the purpose of the height restriction in the R-5 zone." Plaintiff

asserts that any building that exceeds four stories is inconsistent with the "clear" purpose of the R-5's height restriction. In support of its argument, plaintiff relies on a provision contained in the preamble to the R-5 zoning ordinance stating that the "intent of the zoning regulations are to protect the historically low-rise nature of the neighborhood from inappropriate infill such as . . . buildings greater than four stories . . . ." Plaintiff further argues that the judge failed to consider the legislative history for the implementation of the R-5 zone which would have further illuminated the purpose for the height restriction.

Second, plaintiff maintains the Board and Judge Militello's decisions were arbitrary and capricious as they incorrectly applied our holding in Grasso. Plaintiff contends the record does not support the Board's finding that the proposed structure would be "consistent with the surrounding neighborhood," as required by Grasso. Plaintiff further asserts that "[a]s a matter of fact, and as a matter of law, a [five]-story project would not be 'consistent with the surrounding neighborhood'" regardless of the evidence the Board relied upon.

Finally, plaintiff argues the variances substantially impair the purpose and intent of the R-5 zone. Plaintiff maintains that "[g]iven the R-5's recent enactment and its stated purpose, any building height taller than [four] stories should be regard[ed] as substantial."

We disagree with all of these arguments and affirm substantially for the reasons detailed in Judge Militello's well-reasoned and thorough oral decision. We provide the following comments to amplify our decision.

## II.

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Twp. of Branchburg Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013). We defer to decisions of local boards if they are adequately supported by the record, Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 61 (1999), and if they are not arbitrary, unreasonable, or capricious, Pullen v. Twp. of S. Plainfield Planning Bd., 291 N.J. Super 1, 6 (App. Div. 1996). Further, a zoning "board's decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). A board's factual determinations are entitled to "great weight" and should not be disturbed "unless there is insufficient evidence to support them." Rowatti v. Gonchar, 101 N.J. 46, 52 (1985). When reviewing a board decision, a court must consider the issues before the board in their entirety and not focus on the legal sufficiency of one factor standing alone. Kramer v. Bd. of Adjustment, 45 N.J. 268, 287

(1965).  For example, a court cannot consider a variance in isolation, but must consider it "in the context of its effect on the development proposal, the neighborhood, and the zoning plan."  Pullen, 291 N.J. Super. at 9.

Generally, an applicant for a (d) variance must show "special reasons," the statute's positive criteria, and that the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan," the statute's negative criteria.  Grasso, 375 N.J. Super. at 48-49 (quoting N.J.S.A. 40:55D-70(d)).  "The standard for establishing special reasons depends on the type of (d) variance at issue."  Id. at 49 (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 83 (2002)).

For a (d)(6) or height variance, an applicant can establish the positive criteria by demonstrating undue hardship, that is, "the property for which the variance is sought cannot reasonably accommodate a structure that conforms to, or only slightly exceeds, the height permitted by the ordinance.  Stated differently, the applicant for a (d)(6) variance on grounds of hardship must show that the height restriction in effect prohibits utilization of the property for a conforming structure."  Id. at 51.  Defendants do not appear to contend that an undue hardship exists.

11

Alternatively, an applicant can demonstrate that the proposed structure's height will not offend the zoning ordinance's purpose for the height restriction and will "nonetheless be consistent with the surrounding neighborhood." Id. at 53. We also noted in Grasso that the inherent purposes of height restrictions are to limit the effect of building height on "traffic congestion, fire hazards, public health, adequate light and air, and population density." Id. at 52.

In determining whether a proposed construction is "'consistent with the surrounding neighborhood' we have previously indicated that the 'special reasons' necessary to establishing a height variance 'must be tailored to the purpose for imposing height restrictions in the zoning ordinance.'" Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 464 (App. Div. 2015) (quoting Grasso, 375 N.J. Super. at 52-53).

Applying these standards, we find no basis to disturb Judge Militello's factual findings, all of which are well supported by the record and reject plaintiff's contention that the Board made inadequate findings to support its conclusions. To the contrary, after clearly considering the expert testimony and other evidence presented during the hearing, the Board issued a comprehensive resolution detailing the factual and legal bases for its approval of the application, including the request for variances on height, density, bulk, and parking. We

12

agree with Judge Militello's conclusion that the Board appropriately considered the impact the project would have on the neighboring properties.

Contrary to plaintiff's first argument, both the Board and Judge Militello determined, with ample support in the record, that the height variance did not offend the purpose of the R-5 zone. The Board also reviewed the legislative history of the R-5 zone and considered the testimony of its planner. The Board and Judge Militello, however, concluded that the unique size and configuration of the building lot, and the fact that the offending fifth floor would be set back approximately sixteen feet and essentially hidden from view, effectively satisfied the purpose and goals of the R-5 zone.

In support of this conclusion, the Board relied upon Brunswick's planner's testimony that "any shadows being cast by the building would be to the north and have no direct impact on any properties to the south." The Board also found that the building "establish[ed] a desirable visual environment . . . as compared with the existing site" which included an abandoned funeral parlor. Moreover, the Board concluded that the inclusion of "residential and retail development and parking" would "directly conform to the stated purpose of the R-5 zone." See Grasso, 375 N.J. Super. at 52-53.

We also reject defendant's argument that the Board and Judge Militello misapplied our decision in Grasso. There was more than sufficient evidence before the Board for it to conclude that "a taller structure than permitted by ordinance would nonetheless be consistent with the surrounding neighborhood," while not offending the purpose of the height restriction. Grasso, 375 N.J. Super. at 53. As the Board found in its Resolution based on the testimony of Brunswick's planner, the partially hidden fifth floor would not offend the R-5 zone's four-story limit as the uniquely shaped lot and sixteen foot setback of the fifth floor caused it to "appear[] to be a four-story mixed-use building" consistent with the surrounding developments. Specifically, Brunswick's planner testified that the proposed construction does not have "a five-story . . . façade, but it has that set back . . . that works nicely with keeping in the existing framework." We are also satisfied that the unique configuration of the lot, and the recessed fifth floor, serve as adequate protections against plaintiff's concerns regarding the adverse precedential effect of the Board's and Judge Militello's decision

The Board and the court also considered the height of the buildings in the surrounding area and the location of the proposed development to nearby structures. See Jacoby, 442 N.J. Super. at 467. Indeed, Brunswick's planner

performed a height analysis of the surrounding area that determined, as previously noted, "that the proposed project matches the surrounding developments along Brunswick Street, in that it appears to be a four . . . story mixed use building." Furthermore, although the Board's professional planner noted in the Memorandum that "[a]nything higher than [four] stories would be out of character with the surrounding neighborhood," she later testified "that all applications are unique and . . . we need to look at [them] separately." In sum, we are satisfied that the Board and Judge Militello properly applied the standard for evaluating (d)(6) height variances as discussed in Grasso.

The Board's finding that Brunswick's application satisfied the purposes of the MLUL identified in N.J.S.A. 40:55D-2(a), (e), and (i) and that the variances do not impair the intent and purpose of the R-5 zone, are also amply supported by the record. Indeed, both the use and bulk variances support a mixed-use development which is expressly permitted by the R-5 zone with off-street parking, a green roof, and an open space terrace for use by neighborhood residents. The Board properly considered these features of the development.

Finally, although we acknowledge, as did the Board and Judge Militello, that the R-5 zone was passed in large measure to restrict five-story developments, that fact alone is insufficient to conclude that the Board's decision

15

to grant the height variance which permitted a recessed fifth story was arbitrary and capricious. Indeed, variances "are necessary because the law cannot anticipate all of the circumstances that might arise in the land use context." Cox & Koenig, New Jersey Zoning and Land Use Administration, § 28-1 (2020).

In sum, as all of Judge Militello's findings were supported by sufficient evidence in the record, his findings and those of the Board, are entitled to our deference. We, therefore, affirm the trial court's order of October 19, 2019, affirming the Board's decision granting variance relief and site plan approval.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                    A-1115-19T2